Gmail

Laurie <sflauriecase@gmail.com>

# AFFIDAVIT OF LAURA ANN MCMILLAN IN SUPPORT OF PLAINTIFF'S OPPOSITON TO SUMMARY JUDGMENT

1 message

Laurie <sflauriecase@gmail.com> Sat, Nov 29, 2025 at 3:58 PM
To: Laurie <sflauriecase@gmail.com>

**AFFIDAVIT OF LAURA ANN MCMILLAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**STATE OF TEXAS**

**COUNTY OF HARRIS**

BEFORE ME, the undersigned authority, on this day personally appeared LAURA ANN MCMILLAN, who, being by me first duly sworn, deposed and stated as follows:

1. I am the Plaintiff in this action, am over eighteen (18) years of age, and am competent to testify. I submit this Affidavit based upon my direct personal knowledge to fully inform the Court of the underlying facts and to respond to the Defendant's Motion for Summary Judgment.

## PART I: The Valid Policy and Irrefutable Insurable Interest (2010–2022)

2. The structure, known as the 'Little House,' was acquired by me as a gift in January 2010 after consultation with all property owners, who confirmed they had no interest in the dilapidated structure. This gift was made with the clear intent that I would remodel it up and keep it. We named it the "Little House" on the Prairie the day it was given to us.
3. The structure was completely **uninhabitable**. My current husband, **Bart Lyons, an outstanding general contractor with over 50 years of experience**, was the main person responsible for the rehabilitation. Bart and I undertook a comprehensive, structural rehabilitation that took **over one full year** to complete. This massive, verifiable investment, attested to by a seasoned professional, included replacing all key systems: **full roof replacement and decking, new electrical wiring and panel, entirely new plumbing lines and fixtures, HVAC system installation, full insulation and drywall throughout the structure**, new windows, and flooring. This extensive rehabilitation confirms the substantial, long-term economic investment and insurable interest I established in the dwelling.
4. I began paying premiums for a homeowner's policy (the "Policy") from State Farm in March 2010. I paid every premium diligently for a period exceeding **twelve and a half (12.5) consecutive years.** The Policy was active and legal at the time of the fire in 2022.
5. **Child Support Lien:** My legal insurable interest is further confirmed by a current, outstanding **child support lien** on the property. This lien was not satisfied when the property was added to a trust, which is currently being investigated as an illegal attempt to circumvent the lien. **As a matter of law, this lien confirms my continued legal and economic interest in the property.**
6. **Physical Evidence of Investment and Use:** I possess approximately **75 to 100 photographs** that visually document my insurable interest, including before-and-after photos of the structure's rehabilitation, documentation of all major upgrades made over 12 years, and numerous photos of myself, my family, and my dogs living at and using the home as my primary residence. **These photos are attached as Exhibit #118** and irrefutably support the duration and depth of my interest in the property. My husband, Bart Lyons, will attest in **Exhibit #119 (Affidavit of Bart Lyons)** to the fact that he would never perform such extensive, expensive work on land that was not explicitly given to us for that purpose.
7. My insurable interest was confirmed by two different State Farm agents (Randy Schulte, 2010-2018, and Matt Gaby, 2018-2022). Most importantly, in November 2021 (three months before the arson), the actual legal Trustee of the land, Lee Aaron McMillan, confirmed in **Exhibit #120 (Trustee Recording Transcript)** that the Little House was my property and that he was fully aware I was paying the insurance on it. This admission directly refutes the claim of both Timothy McMillan and State Farm that I lacked insurable interest.

## PART II: Direct Legal Rebuttal to Summary Judgment Claims (The Arsonist's Lies vs. Agent Expertise)

8. The Defendant's entire defense rests on the legally impossible claim that I lacked an insurable interest in the property. This defense is entirely void under Texas law due to the following facts which are confirmed by the Defendant's own records:
9. **Waiver by Acceptance of Premiums:** By accepting twelve and a half years of continuous premium payments, State Farm **waived** any right to contest the validity of the policy or my insurable interest. They cannot accept my money for over a decade and then claim the contract was never valid.
10. **Estoppel by Prior Payment:** State Farm is legally **estopped** (prevented) from denying coverage because they **paid a prior claim to me for structure damage in 2015** under the exact same policy and on the exact same structure. This act confirmed my insurable interest and their acceptance of liability for the dwelling structure. **As a pro se litigant, I have researched the matter and found that the doctrine of Waiver and Estoppel is well-established, settled law in federal courts and applies directly to State Farm's conduct.**
11. **Expert Professional Opinion:** The defense's denial is flatly contradicted by the sworn testimony of **two former State Farm insurance agents, Randy Schulte (Exhibit #126) and Matt Gaby (Exhibit #123), who together possess over 60 years of combined experience.** Both agents unequivocally state that this claim should have been paid and that the denial is wrong. This professional consensus within State Farm's own ranks confirms that the denial was made without any reasonable basis and constitutes bad faith.
12. **The Baseless Foundation of the Defense:** The Defendant's entire case of ownership is based exclusively on the unsworn word of **Timothy McMillan**, the man who confessed to ordering the arson and who lied to police and insurance agents, falsely claiming to be the "trustee." **The recording in Exhibit #120** proves that Timothy's documents and claims were and remain fraudulent. Timothy McMillan provided all of the documents relied upon by the defense, none of which contain a single mention or description of the ownership of the specific structure known as Laura's home. **Therefore, the claim of "no insurable interest" is not supported by any credible or relevant evidence.**
13. **Conclusion of Rebuttal:** The evidence establishes that State Farm had a legal duty to pay this claim and **there was no reasonable basis for denial.** The Defendant's Motion for Summary Judgment, which relies on the "no insurable interest" claim, is defeated on its face by the doctrine of waiver and estoppel and by the professional opinion of their own former agents.

## PART III: The Arson, Conspiracy, and Abuse of Process

14. On [**INSERT DATE OF FIRE**] in 2022, my home and all my belongings were intentionally destroyed by fire. **Photos of the remnants of the house from the day of the fire are included in Exhibit #121.**
15. The responsible party, Timothy McMillan, confessed to former State Farm Agent Matt Gaby that **he ordered the fire and was responsible for the arson** (See **Exhibit #123, Declaration of Matt Gaby**, Paragraph 9). Police confirmed that Timothy admitted taking **some artifacts** out of the house before destroying and burning it down, confirming **premeditation, malice, and theft.** Further proving this malice, a photograph exists showing the arsonist, Timothy McMillan, immediately after the fire, proudly drinking a beer and smoking a cigarette in the location where my home once stood, demonstrating immense pleasure in the destruction. **This photo is attached as Exhibit #122.**
16. **Arson Against Landowner's Will:** The criminal act of arson was committed on land owned by Glenn McMillan, and it was done **against Glenn's explicit wishes and without his knowledge or consent.** Glenn's sworn statement in **Exhibit #127 (Declaration of Glenn McMillan)** confirms that Timothy had no right to commit or order this act, and further confirms Timothy's efforts to illegally trespass us from our own home.
17. **Liquidation of a Dream:** Timothy McMillan began actively working to liquidate the family ranch immediately after his father's passing, against the explicit wishes of both parents, requiring my home to be gone for a sale. This provides the clear **motive** for the arson.
18. **Willful Misrepresentation to the Court (Duration of Policy):** Defense counsel, **Mr. Holldy,** lied in open court and through filings to make it sound as if the Plaintiff only held the policy for approximately one year. Mr. Holldy and State Farm were in full possession of the financial records proving that the Plaintiff paid premiums in good faith for **over twelve and a half (12.5) consecutive years.**
19. **Willful Misrepresentation to the Court (Deceased):** The Defendant is also trying to mislead this Court by basing their defense on a lie: they claim a deceased family member, Michael "Mickey" McMillan, was involved in the burning. **Michael McMillan has been dead for two years** prior to the incident (**Proof of Death attached as Exhibit #124**). I personally recall Mickey McMillan being present and expressing immense pride when my husband and I were rehabilitating the Little House. His wishes, shared by his father, were to protect the ranch and ensure it was never sold, specifically for the enjoyment of the grandchildren. His dedication to preserving the ranch and his death prior to the incident confirm why he was never and could never be the acting trustee. **There must be recourse for the Defense openly misleading this Court with lies about a dead man planning to set a fire.**
20. **Abuse of Discovery:** The Defendant's lawyers have also lied to the Court about the reason my deposition was suspended. They are exploiting court procedures and the incomplete record they intentionally created. **There must be recourse for the Defense lying about the suspension of my deposition.**
21. **Fraudulent Disclosure of Private Information (Texas Insurance Code § 541.061):** Timothy McMillan obtained my confidential Policy number and Claim number because a State Farm agent, **Erickson Sullivan** (a friend/affiliate of Timothy), **knowingly gave my private, confidential policy details to the arsonist.**

22. **This is statutory fraud.** This action constitutes a **failure to disclose a material fact** and a **misrepresentation of an insurance policy** that caused me damage, violating the **Gramm-Leach-Bliley Act (GLBA)** and **Texas Insurance Code § 541.061. There must be recourse for knowingly and fraudulently giving my policy information to the person that burned my home down.**
23. Timothy McMillan subsequently used this illegally obtained information to interfere with the claims process, falsely claiming to be a "trustee" and trying to stop my own agent, Matt Gaby, from talking to me about my own policy.

## PART IV: State Farm's Institutional Bad Faith and Unconscionable Action (DTPA/TIC § 541.060)

24. State Farm has refused to pay my legitimate claim for nearly **four years**, relying on these manufactured lies.
25. This delay constitutes **Unfair Settlement Practices** under **Texas Insurance Code § 541.060**.
26. **Funding the Arsonist's Defense:** Despite knowing Timothy McMillan confessed to ordering the arson, and despite knowing the **actual Trustee** admitted I own the house and it was insured, State Farm intentionally gave Timothy an umbrella insurance policy to pay for his legal defense against me.
27. This action is **unconscionable** under the **Texas Deceptive Trade Practices Act (DTPA)** and represents a fundamental act of **institutional bad faith and malice** designed to protect the criminal at the expense of the policyholder. **There must be recourse for giving the person who burned my home down an umbrella policy for a known act of malice.**
28. **Facilitating Abuse and Stalking:** By knowingly providing this illegal legal shield, State Farm is actively protecting the individual who has subjected the Plaintiff to **years of stalking and severe mental abuse**. For example, on **February 13, 2022**, police had to be called to my home due to Timothy's harassment (**Police Report attached as Exhibit #125**). State Farm's protection enables the continuation of this harm and constitutes a direct, willful increase in the Plaintiff's mental anguish.
29. The Defendant's entire defense is defeated by the sworn testimony of **six key witnesses** (Bart Lyons, two former State Farm agents, the actual Trustee, **Glenn McMillan**, and a family member) who contradict the arsonist's unsworn word.

## PART V: Damages, Penalty Claim, and Demand for Jury Trial

30. As a direct result of the Defendant's **fraud, unconscionable action, and breach of contract**, I have suffered ongoing damages, including: a. **Actual Damages:** The total amount of the Policy claim (the structure and contents, **[INSERT INITIAL DAMAGE VALUE HERE]**), plus the accumulated **Loss of Use** costs for four years. b. **Refund of Premiums:** Because State Farm now claims the policy was void due to lack of insurable interest, the Plaintiff is entitled to the full refund of all premiums collected over the **twelve and a half (12.5) year policy term**. This is an additional and distinct measure of economic damage. c. **Mental Anguish:** Damages for the severe mental abuse and emotional distress caused by the stalking, the loss of my home, and the malicious four-year delay by State Farm. d. **Litigation and Economic Damages:** The costs for **four years of legal fees, deposition costs, expert witness fees, and other litigation expenses**. Furthermore, the personal sacrifice of being forced to spend an entire **Thanksgiving week** preparing this response is a direct example of the substantial hardship caused by State Farm's bad faith conduct.
31. Because State Farm's conduct was **knowing and intentional**, the Plaintiff is entitled to: a. **Sanctions** against the Defendant for abusing the court process, including the misrepresentation of the policy term by **Mr. Holidy**. b. **Attorney's Fees and Costs** (as requested in the Original Petition). c. **Punitive Damages (Exemplary Damages)** for fraud and intentional misconduct (Texas Civil Practice and Remedies Code § 41.003). d. **Three times (3X)** the amount of the economic damages and damages for mental anguish suffered (DTPA/TIC Chapter 541).
32. **A Jury Trial is Mandatory:** The Motion for Summary Judgment must be **DENIED in its entirety** because the dispute hinges on issues of fact, intent, and credibility. The Plaintiff must be allowed a jury trial so that **her husband, Bart Lyons (Exhibit #119), the landowner Glenn McMillan (Exhibit #127), former State Farm Agents Randy Schulte (Exhibit #126) and Matt Gaby (Exhibit #123) can speak** about the Defendant's bad faith, and a jury can decide the willful nature of the Defendant's statutory violations and the credibility of the arsonist versus the policyholder. **It is a profound and sad reality in America that a pro se individual must fight this hard against an almost trillion-dollar corporation just to seek justice and enforce a contract paid in good faith for thirteen years, especially when the Defendant's own veteran agents agree the claim should have been paid.**

## FINAL LEGAL STATEMENT (Pro Se Research on Governing Law)

Through my own research, I believe the Court should examine the following governing Texas statutes before ruling on Summary Judgment:

- **Texas Insurance Code § 541.060** (Unfair Settlement Practices)
- **Texas Insurance Code § 541.061(a)(1)** (Misrepresentation of Policy)
- **Texas Civil Practice and Remedies Code § 41.003** (Exemplary Damages)

- **Texas Deceptive Trade Practices Act (DTPA) § 17.50** (Treble Damages)

**What these laws mean simply for this Judge:**

1. **Texas Insurance Code § 541.060 (The "Bad Faith" Law):** This is the core statute establishing the Defendant's liability. It says State Farm must pay claims without a reasonable basis for denial. **State Farm broke this law by relying on the arsonist's lies and ignoring its own agents' advice.**
2. **Texas Insurance Code § 541.061(a)(1) (The "Privacy & Fraud" Law):** This law says State Farm cannot engage in misleading acts, which includes an agent giving my confidential policy and claim number to the arsonist, who then used it to commit fraud and interfere with my claim. **This abuse of my private information is an independent, statutory violation.**
3. **Texas Civil Practice and Remedies Code § 41.003 (The "Punisher" Law):** This law allows the jury to punish State Farm with **extra fines (Punitive Damages).** This is allowed because State Farm's behavior—protecting the arsonist and misleading this Court—constitutes fraud and malice.
4. **Texas Deceptive Trade Practices Act (DTPA) § 17.50 (The "Triple Money" Law):** If a jury finds State Farm acted **knowingly or intentionally** in breaking these laws, this statute mandates that the jury can take my total economic damages (the house value, fees, and premium refund) and **triple that amount.**

FURTHER AFFIANT SAYETH NOT.

Laura McMillan

LAURA ANN MCMILLAN (Affiant)

**JURAT (NOTARY SECTION)**

SWORN TO AND SUBSCRIBED before me, the undersigned authority, this 30th day of November 2025 to certify which witness my hand and seal of office.

Marjiyaben Javidhu Musa.

Notary Public in and for the State of Texas

My Commission Expires: December 3, 2025

MARJIYABEN JAVIDHU MUSA
Notary ID #133488313
My Commission Expires
December 3, 2025
NOTARY PUBLIC STATE OF TEXAS