United States District Court
Southern District of Texas
**ENTERED**
December 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA ANNE MCMILLAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-24-504 |
| STATE FARM INSURANCE LLOYDS, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND OPINION**

This is an insurance dispute over a small home, aptly referred to as "Little House," that was bulldozed and burned by the insured's son in January 2022. Laura McMillan purchased an insurance policy from State Farm on the home in 2010. She paid policy premiums for twelve-and-a-half years, and State Farm paid a claim based on water damage to the Little House. But Little House is McMillan's second home, raising the question whether the policy, which only covers buildings where McMillan resides, covers Little House. McMillan's former husband, now deceased, had placed the property in a trust for the benefit of his children, raising the question whether she has an insurable interest in the property. For these reasons, State Farm refused to pay under McMillan's policy. McMillan sued and is now litigating the case pro se. State Farm has moved for summary judgment on each of her claims.

Based on the motion for summary judgment, the response, the record, and the applicable law, the court grants in part and denies in part State Farm's motion for summary judgment. McMillan's contract claim may proceed, but her non-contractual claims do not survive summary judgment. The reasons for these rulings are set out below.

**I.     Background**

This insurance dispute arises out of a property in New Ulm, Colorado County, Texas, that consists of 58.003 acres. (Docket Entry No. 26-3). The "Michael McMillan Ranch Trust" was established on or about December 28, 2011, by Michael "Mickey" McMillan, Laura McMillan's former husband, with the intention of including the property in an irrevocable trust for Mickey's five children. (Docket Entry No. 26-4). A deed recorded on December 30, 2011, in Colorado County describes this intention. (Docket Entry No. 26-5). In April 2018, Michael McMillan conveyed by deed of gift any remaining interest in the property to the Michael McMillan Ranch Trust. (Docket Entry No. 26-6).

In January 2022, Timothy McMillan, one of the McMillan children, burned and bulldozed a structure on the property, referred to as "Little House." (Docket Entry No. 26-8 at 2). Laura McMillan often lived in Little House, even after the property was formally conveyed to the Trust for Michael McMillan's children. (Docket Entry No. 31-1 at 1–4). Although it was not her primary residence, Laura McMillan spent "weeks at a time" there, "all the time." (Docket Entry No. 27 at 20:7–8).

When Little House burned and was torn down, Laura McMillan had a State Farm Lloyds Homeowners' Basic Policy on the structure. (Docket Entry No. 26-2). The policy had been in place for about 12 years. State Farm previously paid a claim that Laura McMillan made under the policy; State Farm explains that it made that payment because it did not know that Laura McMillan did not own the property. (Docket Entry No. 26 at 3).

When Laura McMillan visited the property in January 2022, she found Little House burned and bulldozed. She contacted the Colorado County Sheriff's Office, and Deputy Robert Villanueva responded to the call. (Docket Entry No. 26-10 at 4). Timothy McMillan told Deputy

2

Villanueva that he owned the property through the Trust, that he had given the instruction to destroy Little House, and that his mother, Laura, had no rights to the property. (*Id.*). Laura McMillan responded that she had liens on Little House or the land, although she did not send the lien documents to Deputy Villanueva. (*Id.*). Glen McMillan—Laura's son, Timothy's brother, and a Trust beneficiary—disputes that Timothy had obtained consent and authority to destroy Little House, asserting that Timothy had no right to "trespass" onto his mother's "home." (Docket Entry No. 30-9 at 1).

Laura McMillan filed a claim with State Farm. State Farm paid the personal-property portion of the claim for her belongings that were in Little House when it was destroyed. But State Farm denied her claim for the value of Little House because it learned through Timothy McMillan and others that she did not live there and had no insurable interest in the property. (*See* Docket Entry No. 26 at 3).

Laura McMillan sued State Farm for breach-of-contract under the policy, deceptive-trade practices, fraud, and negligent misrepresentation. (Docket Entry No. 1-2). State Farm moved for summary judgment on all claims. (Docket Entry No. 26).

## II.     The Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue of fact is genuine if a reasonable trier of fact could return judgment for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary." *Id.* "The court must construe all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-moving party."

3

*Maldonado v. Harris County*, 2025 WL 2443389, at *2 (S.D. Tex. Aug. 25, 2025) (citing *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988)). "If the non-moving party prevails as a matter of law after so construing the record, or if reasonable minds could differ on the import of the evidence presented, the court must deny the motion for summary judgment." *Id.* (citing *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020)).

**III.  Analysis**

    **A.  The Breach of Contract Claim**

Laura McMillan alleges that State Farm breached their insurance agreement by failing to pay her claim for the destruction of Little House. State Farm responds that McMillan cannot recover under the policy because she did not reside in Little House, as required by the policy, and because she does not have an insurable interest in Little House. State Farm's motion for summary judgment is denied because there are genuine factual disputes material to determining whether McMillan resided at Little House and whether she has an insurable interest in it.

        **1.  Residence**

McMillan's policy covers the dwelling and other structures on the insured property. Under the dwelling clause, the policy "cover[s] the dwelling and materials and supplies located on or adjacent to the residence premises for use in the construction alteration, or repair of the dwelling or other structures on the residence premises." (Docket Entry No. 26-2 at 13). Under the other-structures clause, the policy "cover[s] other structures on the residence premises, separated from the dwelling by clear space." (*Id.*).

State Farm argues that Little House does not fall under these coverage provisions because it is not a dwelling on the residence premises. Under the policy, a "dwelling" is "the building structure on the residence premises used as the primary private residence." (*Id.* at 10). A residence

4

premises is "the one, two, three, or four family dwelling, other structures and grounds," or "part of any other building structure . . . where [McMillan] reside[s] and which is shown in the Declarations." (*Id.* at 12). State Farm argues that the policy does not cover Little House because it was not McMillan's primary residence but a second residence where she visited but did not reside. (Docket Entry No. 26 at 9).

State Farm's argument does not warrant summary judgment. Under the policy terms, Little House did not need to be McMillan's primary residence or the main residence on the property to be covered. If Little House is "the primary private residence" on the property, then the policy covers it. (Docket Entry No. 26-2 at 10). If Little House is a secondary residence on the property, the policy still covers it as one of the "other structures on the residence premises, separated from the dwelling by clear space." (*Id.* at 13). The definition of "residence premises" includes, aside from the dwelling, "other structures and grounds" or "part of any other building structure . . . where [McMillan] reside[s]." (*Id.* at 12). So long as the Little House is a structure where McMillan resided, the policy covers it.

The insurance policy does not define "reside," so this court looks to the ordinary meaning. *Adkisson v. Safeco Ins. Co. of Indiana*, No. 6:23-CV-00146-JDK, 2024 WL 5049974, at *7 (E.D. Tex. Nov. 15, 2024), *report and recommendation adopted*, No. 6:23-CV-146-JDK-JDL, 2024 WL 5047868 (E.D. Tex. Dec. 9, 2024). To "reside" at a place means "to dwell permanently or for a considerable time, to have one's settled or usual abode, to live, in or at a particular place." *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 805 (5th Cir. 2009) (*quoting* OXFORD ENGLISH DICTIONARY (2d ed. 1989)); *see also Residence*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("The act or fact of living in a given place for some time."). The term's disjunctive definition—to "dwell permanently *or for a considerable time*," *Korbel*, 308 F. App'x at 805 (emphasis added)—reflects

5

the practical and legal reality that "in Texas an individual can have more than one residence," *Adkisson*, 2024 WL 5049974, at *9; *see Cicciarella v. Amica Mutual Ins. Co.*, 66 F.3d 764, 769 (5th Cir. 1995) ("[A] person may, and many do, have more than one residence." (quoting *Hartford Casualty Ins. Co. v. Phillips*, 575 S.W.2d 62,64 (Tex. App.—Texarkana 1978, n.w.h.)). Although the undisputed facts show that Little House was a second home for Laura McMillan, that fact is not determinative. The question is whether, based on the "totality of the person's factual circumstances," *Adkisson*, 2024 WL 5049974, at *7, McMillan spent such a "considerable time" at Little House that she resided there. *See id.* at *7–9 (considering the totality of the circumstances to determine residence); *Korbel*, 308 F. App'x at 805–06 (same); *Russ v. Safeco Ins. Co. of America*, No. 2:11-cv-195, 2013 WL 1310501, at *6–8 (S.D. Miss. Mar. 26, 2013) (same).[1]

A factfinder could reasonably find on this record that Laura McMillan spent such a considerable amount of time at Little House that she resided there. Although Laura McMillan testified that Little House was a second home, she explained that she "lived" at Little House "for weeks at a time all the time." (Docket Entry No. 27 at 20:7–8). She called it her "second home." (*Id.*). The photographs that Laura McMillan submitted support her testimony. They show that she cared for and renovated the property, furnished it, and spent holidays, like Christmas, there. (*See* Docket Entry No. 30-1).

These facts are in sharp contrast to other cases in which courts have found that insureds did not reside at the property at issue. In *Adkisson*, the insured "voluntarily moved away from the property years before the COVID-19 pandemic"; he "stayed at the property when he was

---

[1] This court relies on cases interpreting identical insurance provisions under Louisiana or Mississippi law because those states' laws do not materially differ with respect to interpreting insurance policies. *Villalobos v. Clear Blue Ins. Co.*, No. 24-20125, 2024 WL 5053425, at *1 (5th Cir. Dec. 10, 2024) (per curiam); Mt. Hawley Ins. Co. v. Jamal & Kamal, Inc., 550 F. Supp. 3d 432, 436 (S.D. Tex. 2021).

performing renovations on the property, which was sporadic and random at best"; the home lacked essentials for living, such as furniture, appliances, and clothing; and the insured characterized his time at the property as "visits." 2024 WL 5049974, at *9–10. In *Kobel*, the Fifth Circuit held that the property at issue was not the insured's residence because he "only sometimes slept at the house when working late on renovations"; he "kept only a minimal amount of furniture there"; and he "did not engage in leisure activities at the house." 308 Fed. App'x 805–06. By contrast, McMillan testified that she lived at Little House as a second home and, based on photographs in the record, kept many personal belongings there, furnished it, and spent leisure time, such as celebrating holidays, at the home.

The facts in this case are much closer to those in *Russ* than in *Kobel*. The *Russ* court found a genuine factual dispute as to whether the covered property, which had suffered fire damage, was a "residence premises." 2013 WL 1310501, at *6–7. Although the insured was spending most of his time at his then-fiancé's residence and at one point testified that he intended to move there, the insured's father and son planned to live at the covered property; most of the insured's belongings were at the covered property; the insured continued to pay the mortgage at the covered property; and he planned to stay at the covered property from "at least from time to time" to assist in his father's mechanic shop and to continue moving his belongings to his then-fiancé's residence. *Id.* at *7 (quoting *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005, 1009 (Miss. 1993)). "Although [the insured] was sleeping at [his then-fiancé's] house by" the time of the fire, the court still found "sufficient evidence for a reasonable jury to determine that he resided at both her residence and the [c]overed [p]roperty." *Id.* Similarly, although McMillan spends most of her time at a different home, the record evidence of her considerable and consistent use of Little House is sufficient to deny summary judgment on the issue of residence.

### 2. The Insurable Interest Issue

Under Texas law, an insurable interest is necessary to recover under a policy. *See Valdez v. Colonial Cnty. Mut. Ins. Co.*, 994 S.W.2d 910, 914–16 (Tex. App.—Austin 1999, pet denied). The insurable-interest requirement discourages the use of insurance for illegitimate purposes. *See First Preferred Ins. Co. v. Bell*, 587 S.W.2d 798, 802 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). An insurable interest exists "when the insured 'derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.'" *Valdez*, 994 S.W.2d at 914 (quoting *Smith v. Eagle Star Insurance Co.*, 370 S.W.2d 448, 450 (Tex. 1963)). A property owner has an insurable interest in that property, but it is not necessary to own property to have an insurable interest in it. *Id.* "The requirement that an insured must have an insurable interest for the policy to be valid is easily satisfied because courts define insurable interest broadly and make every effort to find an insurable interest to sustain coverage." *United Nat. Ins. Co. v. Mundell Terminal Servs., Inc.*, 915 F. Supp. 2d 809, 825 (W.D. Tex. 2012) (cleaned up), *aff'd*, 740 F.3d 1022 (5th Cir. 2014).

*Smith* shows that the definition of insurable interest is expansive. In *Smith*, a house located on state-owned land was destroyed by fire. 370 S.W.2d at 449. It was undisputed that Smith had the undisturbed use of the house before and at the time she purchased fire insurance on the house and at the time the loss occurred. *Id.* at 450. Smith had also invested in and improved the property. *Id.* Because the fire caused her to lose her use of and investment in the property, the court held that Smith held an insurable interest. *Id.* at 450–51.

The facts of this case resemble those in *Smith*. McMillan testified that she used Little House as a second home and lived in it "for weeks at a time all the time." (Docket Entry No. 27 at 20:7–8). She held a policy on the home for twelve years and had submitted a claim on the policy

8

that the insurance company paid. (Docket Entry No. 26 at 3). In her declaration, she affirmed that she continuously used and had upgraded the property over the past twelve years. (Docket Entry No. 31-1 at 1). Photographs illustrate the facts affirmed in her declaration. (Docket Entry No. 30-1). McMillan's current husband, Bart Lyons, submitted a declaration that offers further details about how they converted Little House from an uninhabitable structure into one in which they lived. (Docket Entry No. 30-2 at 2). He explained that, before Little House was destroyed, he and McMillan "continuously maintained, repaired, and upgrade the structure"; that this use and maintenance "was done visibly and publicly"; and that he and McMillan were the "sole key-holders and occupants" of Little House. (*Id.*). Although McMillan may not have had legal title to Little House, this evidence creates a genuine factual dispute material to determining whether, under *Smith*, McMillan "suffered a pecuniary loss by reason" of its destruction. 370 S.W.2d at 451.

State Farm argues that *Smith* does not apply because McMillan "does not have nor ever had undisturbed use of the house," explaining that "[a]ny permission granted for the Plaintiff's use of the Little House could be revoked at any time by the owners." (Docket Entry No. 26 at 11). State Farm argues that, under Texas law, tenants at sufferance who are subject to immediate eviction and have no future legal interest in a dwelling do not have an insurable interest in that property. *See, e.g.*, *Jones v. Texas Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex. App.—Dallas 1993, no pet.); *St. Paul Fire & Marine Ins. Co. v. Daughtry*, 699 S.W.2d 321, 322 (Tex. App.—San Antonio 1985, writ ref'd n.r.e); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651 (Tex. App.—Texarkana 2013, no pet.); *Great Lakes Reinsurance (Uk) PLC v. Applied Fabricating & Field Servs., LLC*, No. 1:11-CV-454, 2012 WL 13005308, at *4 (E.D. Tex. Dec. 10, 2012).

This argument misunderstands *Smith*. If an insured only holds an insurable interest in a property if the insured cannot be evicted from it, then the case law holding that an insured need not own property would be meaningless. *Valdez*, 994 S.W.2d at 914. The defining characteristic of property ownership is that one can exclude others from its use. *See Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979) (characterizing the right to exclude others from use as one of the most essential sticks in the bundle of rights that are commonly characterized as property). If property ownership is not needed to have an insurable interest in that property, then the fact that a person one can be excluded from that property is not dispositive of the whether that person has an insurable interest in that property. The court focused on the fact of Smith's uninterrupted use of the property, not on whether that use granted him rights in the property, such as through adverse possession. *See Smith*, 370 S.W.2d at 449–51; *Daughtry*, 699 S.W.2d at 322–23. The court could not have relied on Smith's ownership in the property, because an individual cannot adversely possess land from the State. *See Weatherly v. Jackson*, 71 S.W.2d 259, 264–65 (Tex.1934) ("Title cannot be acquired by adverse possession of land belonging to the state . . . ."); *see also Lindsey v. Miller's Lessee*, 31 U.S. (6 Pet.) 666, 672–73 (1832). The court held that Smith had an insurable interest in the land despite the State's right to remove him from that land. Applied to this case, the court's approach means that the fact that others could have excluded McMillan from Little House does not preclude or defeat her insurable interest in it.

The case law that State Farm cites does not support its position. *Jones*, for example, is an application of *Smith* that is distinguishable. In *Jones*, the court held that the insureds who lived in a home that burned did not have an insurable interest in that home because the lender had recently foreclosed on it. *Jones*, 853 S.W.2d at 795; *see also Rhine*, 411 S.W.3d at 661 (following *Jones* in a case that presented materially indistinguishable facts). The court reasoned that the insureds

10

did not have an insurable interest because they "had no future legal interest in the dwelling, and diminished motive and opportunity to protect the property." *Jones*, 853 S.W.2d at 795.  In *Smith*, the insured's uninterrupted use and investment in the property provided a substantial motive and opportunity to protect it.  In *Jones*, by contrast, the recent foreclosure—and, in all likelihood, impending eviction—eliminated the insureds' motive and opportunity to use the property.  The foreclosure meant that the insureds' use of the property would be imminently interrupted.  But in this case, as in *Smith*, Laura McMillan's continued improvements to and use of Little House evince a motive and opportunity to protect, and maintain an insurable interest in, the property.  In *Jones*, this motive and opportunity were absent after the foreclosure.

Applying *Smith* to this case raises the factual question whether, but for Timothy McMillan's order to destroy Little House, Laura McMillan would have continued to enjoy its use. *See Smith*, 370 S.W.2d at 450–51 (holding that an insurable interest existed because a "fire caused" the "loss" of "the undisturbed use of the house long prior to . . . the time the loss occurred"); *cf. Daughtry*, 699 S.W.2d at 322 (explaining that *Smith* "was decided on the premise that a person who sustains a loss from the destruction of property has an insurable interest in it").[2]  The undisputed fact that Laura McMillan enjoyed uninterrupted use of Little House before Timothy McMillan ordered its destruction brings this case close to *Smith*.

The remaining legal question under *Smith*, *Jones*, and the related case law is whether the destruction of Little House was a legally appropriate exercise of a property owner's rights or an illegal act that the policy provides coverage for Laura McMillan's insurable interest.  State Farm's

---

[2] *Daughtry* does not apply, and explicitly distinguished *Smith*, because the insured did not live in or have uninterrupted use of the insured property at the time it burned.  *See Daughtry*, 699 S.W.2d at 322 ("Unlike Smith, appellee had never come into possession, and had no prior period of use on which to base a claim of pecuniary loss.").

11

brief argues that this case is distinguishable from *Smith* because the loss allegedly occurred "due to a non-covered peril—intentional destruction—authorized by the owners, not a fire." (Docket Entry No. 26 at 11). If the destruction of Little House was legal, then Timothy McMillan, through the Trust, conclusively interrupted Laura McMillan's use of Little House by destroying it, undermining her insurable interest. This case would resemble *Jones* under such a set of facts. But if the destruction of Little House was impermissible, then its destruction is not materially different from a covered peril, like fire, against which Laura McMillan would have an insurable interest in the property. *Smith* would control under those facts. Indeed, the policy seems to cover fire damage, arson, and other malicious acts against the property. (Docket Entry No. 26-2 at 17–19 (providing a reward for arson and covering damage from fire, vandalism, and malicious mischief)).

Whether *Smith* or *Jones* controls depends on facts that are in dispute. The evidence that Little House was legally destroyed in accordance with the terms of the Trust is genuinely disputed. State Farm's argument that the destruction of Little House was legal depends on Timothy McMillan's October 2024 affidavit and Deputy Villanueva's report. (Docket Entry Nos. 26-8, 26-10). The police report is equivocal because, after observing the familial and legal scope of the property dispute, Deputy Villanueva concluded only that "the case is civil until further determinations can be made." (Docket Entry No. 26-10 at 4). In Timothy McMillan's affidavit, he swore that he ordered the destruction of Little House at the direction of Lee McMillan, the Trustee. (Docket Entry No. 26-8 at 2). But Glen McMillan, Timothy's brother and an equal beneficiary to the Trust, stated in a declaration that Timothy did not have the right to destroy, or "trespass," on Little House. (Docket Entry No. 30-9 at 1). There is no evidence from Lee McMillan, the Trustee, that he authorized the destruction of Little House. Nor did State Farm submit the "written consent" that allegedly authorized the destruction of Little House. (Docket

12

Entry No. 26-8 at 2). The summary judgment record is inconclusive on whether the Trustee authorized the destruction of Little House in accordance with the terms set out in the Trust. As a result, the summary judgment record is inconclusive on whether, but for the legal authorization to destroy Little House, Laura McMillan would have continued to enjoy its use. *See Smith*, 370 S.W.2d at 450–51; *Daughtry*, 699 S.W.2d at 322.

Because a genuine dispute of material fact precludes this court from ruling on whether Laura McMillan has an insurable interest in Little House, State Farm's motion for summary judgment on her breach-of-contract claim is denied.

### B.     The Extra-Contractual Claims

State Farm moved for summary judgment on McMillan's claims for breach of the duty of good faith and fair dealing; fraud; negligent misrepresentation; violations of the Texas Insurance Code provisions related to unfair settlement practices, *see* Tex. Ins. Code §§ 541.060(a); and violations of the Texas Deceptive Trade Practices Act. (Docket Entry No. 1-1 at 3–7). State Farm is entitled to summary judgment on these claims. (Docket Entry Nos. 26, 32).[3]

#### 1.     The Breach of the Duty of Good Faith and Fair Dealing Claim

"[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). McMillan must produce evidence showing that (1) State Farm had no reasonable basis for denying or delaying payment of benefits under the policy; and that (2) State Farm knew or should have known that there was no reasonable basis for denying the claim or

---

[3] McMillan moved to strike State Farm's reply brief in support of its motion for summary judgment because State Farm filed its brief a day late. (Docket Entry No. 33). McMillan's motion to strike is denied. The delay was minor, and the court allowed McMillan the opportunity to respond by submitting additional evidence in support of the motion for summary judgment. McMillan suffered no prejudice by State Farm's brief delay.

delaying payment. *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 722 (Tex. App.—Fort Worth 2003, no pet.). A bona fide dispute will not suffice. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193–94 (Tex. 1998). McMillan must show there were no facts before State Farm that would justify its denial of McMillan's claim under the policy. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997).

McMillan cannot do so on this record. State Farm denied coverage because it learned that Laura McMillan did not have a legal right to the property. Recorded legal instruments established a good-faith basis to believe that the Trust owned the property, including Little House. State Farm had a good-faith basis to believe, based on a plausible but ultimately incorrect reading of the case law, that McMillan's lack of ownership in the property meant she did not possess an insurable interest in the property. *See United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 269 (Tex. 1997) (holding that an insurer cannot be held liable for bad faith simply because it misinterprets a rule); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (explaining that if an insurer has a reasonable basis to deny or delay payment of the claim, the insurer is not liable for bad faith, even if that basis is erroneous).

State Farm's motion for summary judgment on McMillan's claims for bad faith and breach of the duty of good faith and fair dealing is granted.

### 2. The Fraud and Fraudulent Inducement Claims

A plaintiff asserting a fraud claim must allege facts that would show that "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and

justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (cleaned up).

"Fraud claims that depend on the existence of an enforceable contract are properly styled as fraudulent inducement claims, not common law fraud claims." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (applying Texas law). "[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Id.* (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Like a broader common-law fraud claim, a fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Id.* In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. *See id.*

McMillan's fraud claim is unsubstantiated and, as far as this court can tell, appears unrelated to the insurance policy at issue. Her complaint does not allege, much less allege with particularity, false statements that induced her to enter into the insurance policy. (Docket Entry No. 1-1 ¶¶ 18–27). Her response to State Farm's motion for summary judgment offers examples of allegedly false statements that State Farm made. (*See* Docket Entry No. 31 at 2–3). But these statements occurred either throughout the legal proceedings—and are alleged factual errors that

15

McMillan can correct through adversarial litigation—or with respect to an umbrella policy that State Farm created for Timothy McMillan based on allegedly false statements that Timothy made and that State Farm allegedly knew were false. (*Id.*). The crux of Laura McMillan's argument is that Timothy McMillan used information that State Farm should not have disclosed to him to interfere with her claims process. (*Id.* at 3). These arguments do not sustain a fraud claim.

State Farm's motion for summary judgment on McMillan's fraud and fraudulent inducement claims is granted.

### 3. The Negligent Misrepresentation Claim

To prove negligent misrepresentation, McMillan must show: (1) a representation by the defendant to her in the course of defendant's business or in a transaction in which the defendant had an interest; (2) that the defendant provided false information for her guidance; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating information; (4) she justifiable relied on the defendant's representation; and (5) the defendant's negligent misrepresentation proximately caused her injury. *Willis v. Marshall*, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.). For the reasons explained in the previous sections, there is no record evidence of a misrepresentation by the defendant that caused McMillan to enter into the insurance contract or to perform another act that caused her injury.

State Farm's motion for summary judgment on McMillan's negligent misrepresentation claim is granted.

### 4. The Deceptive Trade Practices Act Claim

The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." TEX. BUS. & COM. CODE § 17.46(a). To recover under the DTPA, a plaintiff must establish that: (1) she was a consumer of the defendant's goods or services; (2) the

defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the plaintiff. *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex. 1998).

The crux of McMillan's DTPA claim appears to be that State Farm conspired with Timothy McMillan to fabricate a basis to deny Laura McMillan's claim. (Docket Entry No. 28 at 2; Docket Entry No. 31-1 at 2–3). In support, Laura McMillan submits a personal liability umbrella policy that Timothy McMillan took out with State Farm on the day that he destroyed Little House, January 26, 2022. (Docket Entry No. 28-18). She also argues that State Farm placed Timothy McMillan on her insurance policy and disclosed her personal and insurance information to him. (Docket Entry No. 31-1 at 2–3). This evidence is insufficient to state a claim under the DTPA because State Farm paid her claim for her personal property that was destroyed. (*See* Docket Entry No. 27 at 129:18–24). State Farm denied liability on the remaining claims because it thought, based on recorded deeds, that Laura McMillan did not have an insurable interest in the property. There is a bona-fide coverage dispute on that issue, precluding liability under the DTPA. *See Higginbotham*, at 459 ("A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim."); *see id.* at 460 ("Since State Farm was found not to have acted in bad faith, it is clear we must defer to the Texas courts and affirm the lower court's summary judgment for State Farm and against Higginbotham on his claims for violations of the DTPA and the Insurance Code.").

State Farm's motion for summary judgment on McMillan's DTPA claim is granted.

### 5. The Texas Insurance Code Claim

A claim for bad faith under the Texas Insurance Code "is the same" as a common-law bad-faith claim, and both claims are "often examined together." *United Neurology, P.A. v. Hartford*

17

*Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 593 (S.D. Tex.), *aff'd*, 624 F. App'x 225 (5th Cir. 2015). Because there is a bona-fide dispute as to whether McMillan had an insurable interest in Little House, State Farm did not act in bad faith under the Texas Insurance Code by refusing to pay McMillan's claim or delaying payment.

State Farm's motion for summary judgment on McMillan's claim under the Texas Insurance Code is granted.

## IV.     Conclusion

State Farm's motion for summary judgment, (Docket Entry No. 26), is granted in part and denied in part. Summary judgment is granted as to all claims but McMillan's breach-of-contract claim. Genuine disputes of material fact preclude summary judgment on whether McMillan resided at Little House and whether she had an insurable interest in Little House. The court will set a status conference to discuss the next steps in the case and whether mediation may help resolve the dispute. McMillan's motion to strike, (Docket Entry No. 33), is denied.

SIGNED on December 29, 2025, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge